### RALPH LEVY & CO. v. McDOWELL & FIELD.

1. PRACTICE—VERBAL CHARGE.—After the evidence was closed, and before the case was submitted to the jury, the judge gave his opinion upon a part of the testimony, to the effect that it was conclusive in favor of one party to the suit: *Held*, Error, (1) because what was proved was a matter for the jury, and (2) the statute forbids a verbal charge.
2. SHERIFF'S DUTY ON RELEASE OF LEVY OF ATTACHMENT.—Where the plaintiff in attachment directs the release of property held by a sheriff under the attachment, it is the duty of the sheriff to restore the property to the defendant in attachment, or to his agent, and on failure to do so, the sheriff and his sureties would be responsible.
3. VERDICT.—A verdict not disposing of the case as to part of the defendants, and the judgment not disposing of the case as to such defendants, is cause for reversal.
4. SECRET PARTNER.—The testimony of a party that he was "interested" in business with another, not showing the extent or manner of such interest, is insufficient evidence of partnership.
5. See testimony held insufficient to sustain a verdict for the amount found.

APPEAL from Colorado.  Tried below before the Hon. Livingston Lindsay.

March 16, 1872, Ralph Levy & Co. brought suit in the District Court of Colorado county against James McDowell, on an account for $182.75, and sued out an attachment.  On the attachment bond P. Thompson and Shad Cayce were sureties.

J. B. Good, sheriff of Colorado county, under the writ of

attachment seized certain goods as the property of James McDowell, defendant in attachment, of the estimated value of $254.62, a sufficient amount in the opinion of the sheriff to make the amount sued for and costs of suit.

McDowell left the county, and one Crebbs proposed to Ralph Levy & Co. to buy the goods levied on. They referred him to their attorney, who, upon Crebbs paying him $182.75, the amount sued for, released the levy and dismissed the suit.

In the negotiations the impression in some way was made upon the attorney of Ralph Levy & Co., by Crebbs, that he was the secret agent of McDowell, yet he did not so state; and he (Crebbs) seemed to think that he had purchased the goods released, as he obtained them from Good, the sheriff, when they had been released from the levy.

April 26, 1872, suits were instituted in the name of James McDowell and James W. Fields, "doing business under the firm name of James McDowell," against the sheriff Good and his sureties, and against Ralph Levy & Co. and their sureties on the attachment bond, for damages for the wrongful seizure and disposition of the goods levied on. The two suits were consolidated.

On the trial Fields, for plaintiffs, testified "that he was a partner in the grocery house of James McDowell, but had never been known as such, being only a dormant partner; that when the writ of attachment was levied he was absent; * * that he was part owner of the groceries and liquors levied upon; that he considered the value of the same as much larger than the estimate made by the sheriff. * * Having examined the bill of items set out in the petition, he said they were worth the amounts, as alleged, and some of them more—in the aggregate $417—and that the levy of the attachment had broken up the business. When the levy was made, witness was absent."

On cross-examination, Fields stated that he knew of the Ralph Levy & Co. debt; that it was just, and unpaid; that he

was not partner of McDowell when the debt was incurred, 20th January, 1872, and that part of the goods seized by the sheriff were of those sold by Ralph Levy & Co. to McDowell.

J. B. Good, the sheriff, testified that he made the levy of the attachment in the case of Ralph Levy & Co. v. McDowell, upon goods pointed out to him by the attorney of the plaintiffs in attachment. The levy was made in the presence of McDowell, and no more goods were seized than necessary to make the debt and costs; that he made a fair estimate of the value of the goods, and that they would not at public sale have brought more than his estimate, as returned on the attachment—in the aggregate to $256.45.

The levy was made at the instance of the attorney of Ralph Levy & Co., who, after the levy, furnished an indemnity bond. The goods were in good condition, and had sustained no injury when delivered to Crebs. They were delivered to him on his producing the following receipt:

"Received of O. H. Crebs the sum of one hundred and eighty-two dollars, in full satisfaction of the claim of Ralph Levy & Co. against James McDowell; and J. B. Good, the sheriff of Colorado county, will release the goods attached in the suit. R. V. Cooke,

Att'y for Ralph Levy & Co."

Crebs had spoken to witness about wanting to buy the stock of groceries, and from the conversations had with witness by Crebs, witness's impression was that Crebs was acting as the secret agent of McDowell, who had absconded and never returned. Witness knew nothing of Fields as being connected as a partner with McDowell. Witness turned over the groceries to Crebs upon his showing Cooke's receipt for the debt.

Crebs testified that he purchased the goods from R. V. Cooke, esq., the attorney of Ralph Levy & Co.; that he telegraphed to them, offering $150, and they referred him to their attorney, R. V. Cooke. Witness then made the same offer to Cooke, who refused to take the sum, and said he

would not release the levy unless the whole debt was paid—$182.75. Witness finally agreed to pay that amount if the attachment would be lifted off the goods, and paid the money to Cooke, taking his receipt—the same exhibited by witness Good.

Cross-examined, Crebs said he did not buy the goods as the secret agent of McDowell; that he thought by paying the amount of the debt due Ralph Levy & Co., he would get the goods, and have a clear title to them; that he acted for himself in the matter. Cooke did not tell witness that the goods were in legal custody and could not be sold at private sale; that he never received any other writing from Ralph Levy & Co. or their attorney than the receipt above; that he did not take the goods nor pay for them on Cooke's advice. Witness thought he paid all the goods were worth, and thought he was getting a good title to them.

The attachment proceedings in the suit of Levy & Co. *v.* McDowell were read in evidence, showing the seizure of the goods as alleged.

R. V. Cooke, for defendant, testified that he acted as attorney for plaintiffs in the above-named suit, and procured the attachment and caused it to be levied, as already described by witness Good; that he expected the suit to proceed to judgment in the usual way, until he heard by letter from his clients that Crebs had made them a proposition to buy the goods for $150. Crebs made, after some delay, the same offer to witness. Witness told Crebs then and there that the goods were in legal custody, and could not be sold at private sale; that all he could do would be to release the levy upon the goods, and that he would only do this in the event the debt was paid. * * Soon afterwards Crebs agreed to and did pay witness the amount of the debt, when witness gave him the receipt.

The impression made by Crebs on witness, both by his manner and conversation, was that he (Crebs) was acting in the payment of the debt as the secret agent of McDowell, the

defendant in attachment; that he seemed to be satisfied entirely if the attachment was lifted from the property. Witness recollected distinctly telling Crebs that the groceries could not be sold at private sale, as they were in legal custody, and that all that witness could do as attorney of Ralph Levy & Co., was to dismiss the suit and release the levy of attachment. The day after the transaction, Crebs came to witness and wanted to get back the money paid for the groceries, and offered to give them back and put things as they were before the delivery to him by the sheriff. Witness declined, having forwarded a check for the money to his clients, and had dismissed the suit. Witness knew the sheriff, (Good,) who was a reliable officer, diligent in the discharge of his duties. Witness thought Good fell naturally into the error that the receipt shown him by Crebs entitled him (Crebs) to the possession of the groceries, though witness did not intend that the receipt should bear such interpretation, and that he certainly, if asked, would have advised the sheriff only to release the levy, and replace the goods where they were before the levy; that Crebs did not in words say that he was acting as McDowell's agent.

The court charged the jury as follows: "As a legal question, the goods were not wrongfully attached; and if the plaintiffs in the attachment suit ordered the sheriff to release the levy, and he, acting under such order, did release the levy, having first taken an indemnifying bond, as the law requires, the sheriff and his sureties are not liable for the subsequent loss or destruction of the property so released from the levy. But if the jury believe from the evidence that the debt on which the attachment was issued was paid, and the plaintiffs directed the release of the levy, and by the action of Ralph Levy & Co. the property was disposed of by them or by their agent, so that they were lost to the owners, the owners of the property have a right to recover of Ralph Levy & Co. whatever the evidence may show was the real value of the property so released by their order."

The defendants asked the following instructions, which were refused:

"Ralph Levy & Co. could claim no other right or interest in the goods excepting what was acquired by the lien of the attachment; and after the payment and satisfaction of the debt, they had the right to dismiss their suit and order the release of the goods. And if the goods were not wasted or squandered while they were in custody, then and in that event Ralph Levy & Co. were not responsible; and they are not responsible for the goods being turned over to another party being a stranger to the suit, unless it is in evidence that the sheriff acted thus upon their order or upon the order of their agent or attorney."

By bill of exceptions, it appears that after the evidence was concluded, and before the case was submitted to the jury, the presiding judge announced his opinion that as it appeared conclusively in the testimony that defendants, Ralph Levy & Co., by their attorney, had ordered J. B. Good, the sheriff of Colorado county, to release the property attached in the suit of Ralph Levy & Co. v. James McDowell; that the sheriff and his sureties were not responsible in this suit for the goods subsequent to the receipt by him of said order."

The jury found a verdict as follows: "We, the jury, find for the plaintiffs in the sum of four hundred and seventeen dollars, against Ralph Levy & Co."

Upon this verdict judgment was rendered for plaintiffs, and against Ralph Levy & Co., for the sum found by the verdict, and all costs of suit.

A motion for new trial was overruled, and Ralph Levy & Co. appealed.

*Sheeks & Snead*, for appellants.

*McDowell & Fields*, for themselves, cited 1 Chit. on Pl., 92, and authorities there cited; Sayles's Prac., sec. 155.

Ireland, Associate Justice.—The bill of exceptions saved by appellants during the progress of the trial, recites—

"After the evidence was concluded and before the case was submitted to the jury, the presiding judge announced his opinion that, as it appeared conclusively in the testimony that defendants, Ralph Levy & Co., by their attorney, had ordered J. B. Good, the sheriff of Colorado county, to release the property attached in the suit, No. 2806, styled Ralph Levy & Co. v. James McDowell, the sheriff and his sureties were not responsible in this suit for the goods subsequent to the receipt by him of said order;" to which the appellants excepted.

This was error, for three reasons: It was a charge upon the evidence, it was verbal, and, thirdly, it was not correct in point of law.

What had been proven was a question for the jury to find. The statute prohibits a verbal charge. (Paschal's Dig., art. 1464.)

It was the duty of the sheriff, when he received instructions to release the levy, to return the goods to the defendant McDowell, or to his agent, and he and his sureties were responsible to the owner of the goods for their value in case he failed to do so; and the instruction or declaration in presence of the jury was therefore erroneous as a proposition of law.

There is no finding of the jury and no disposition of the cause as between the plaintiffs and Good and his sureties, in any way, and the cause must be reversed on that point.

But the plaintiff Field (and he is the real and only plaintiff that makes an appearance in the cause) fails wholly to show himself entitled to a judgment. His own testimony is all the evidence he adduced either as to his interest in the property levied on or as to its value. He says he was a secret partner of McDowell, and that he was "interested" in the goods levied on. But he does not state in what way or to what extent he was a partner; or to what extent, whether an equal one-half owner; or "interested" to the extent of one

fourth, one third, a half, or to what extent. He says he was at Brownsville when the goods were levied on, and only judges of their value by an inspection of the invoice. This evidence as to the value of the goods could scarcely be allowed to outweigh the evidence of Good and others, who handled the goods, and who must have had a much better opportunity of judging of their value.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.